ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
DIANA M. KWOK (Cal. Bar No. 246366)
Assistant United States Attorney
      General Crimes Section
      1200 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-6529
      Facsimile: (213) 894-0141
      E-mail: Diana.Kwok@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

              FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 14-123-R |
|---|---|
| Plaintiff, | GOVERNMENT'S *REDACTED* UNOPPOSED MOTION REQUESTING INQUIRY ON POTENTIAL CONFLICT OF INTEREST AND SPECIAL APPOINTMENT OF COUNSEL FOR LIMITED PURPOSE; MEMORANDUM OF POINTS AND AUTHORITIES |
| v. | |
| SELIN GHEYVANDIAN, | |
| Defendant. | |

     Plaintiff, the United States of America, respectfully files this motion requesting that the Court convene a hearing and conduct an inquiry to advise defendant Selin Gheyvandian of a potential conflict of interest involving her attorney, to specially appoint counsel to advise defendant of the ramifications of the potential conflict, to determine whether defendant waives the conflict, and to determine whether such waiver is sufficient to cure the conflict.

     Counsel for defendant has stated that he does not oppose the government's request for a hearing and for the special appointment of

counsel for the limited purpose of advising defendant on these issues.

In support, the government relies on the files and records in this case, the attached Memorandum of Points and Authorities and such additional points and authorities as may be provided at the hearing.

Dated: June 6, 2014                    Respectfully submitted,

                                       ANDRÉ BIROTTE JR.
                                       United States Attorney

                                       ROBERT E. DUGDALE
                                       Assistant United States Attorney
                                       Chief, Criminal Division


                                       _____/s/_____
                                       DIANA M. KWOK
                                       Assistant United States Attorney

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

2

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.   INTRODUCTION**

This is a case involving defendant Selin Gheyvandian's ("defendant") commission of bank fraud and money laundering through a scheme that resulted in hundreds of thousands of dollars of loss.  As part of this scheme, defendant made large, fraudulent bank payments to inflate the balances on her credit cards.  After the payments were credited, but before the banks realized that there was not enough money in defendant's bank account to support the payments, defendant used the credit cards to buy hundreds of thousands of dollars of merchandise at stores like Cartier, Apple, and Nordstrom.

In one particular instance, defendant made fraudulent payments totaling $196,175 to Citibank on November 6, 2012, to facilitate the purchase of $195,800 in merchandise at a Cartier store in Beverly Hills on the same date.

The government files this motion because it has been informed that attorney Alex Kessel not only represents defendant Selin Gheyvandian in this case, but also represents defendant's husband, Akop Kantrdzyan, in a separate criminal case.  Notably, Mr. Kantrdzyan accompanied defendant when she made the fraudulent purchases at the Cartier store on November 6, 2012.

This is not a motion to disqualify Mr. Kessel.  Nor should this motion be treated as an accusation of misconduct.  Rather, the government files this motion to fulfill its own ethical and prudential duties to the Court under the Ninth Circuit's opinion in <u>Mannhalt v. Reed</u>, 847 F.2d 576 (9th Cir. 1988).  Following the advice given in <u>Mannhalt</u>, the government must advise the Court of any information suggesting a possible conflict of interest, so the Court

may conduct the necessary inquiry to ensure that defendant's Sixth Amendment right to effective counsel has been sufficiently protected.

**II.   STATEMENT OF FACTS**

The indictment in this case charges defendant with three counts of bank fraud and two counts of money laundering.

The three counts of bank fraud stem from defendant's use of a checking account at California Credit Union ("CCU") to write checks totaling approximately $211,254.22 on November 6, 2012, and February 5, 2013, knowing that the CCU account did not have sufficient funds to honor the checks.  (Indictment, ¶ 3.)

The two counts of money laundering stem from defendant's purchase of $195,800 in merchandise at the Cartier store in Beverly Hills on November 6, 2012.  (Indictment, ¶ 6.)  Surveillance footage from the video cameras at the Cartier store show that defendant's husband, Akop Kantrdzyan, was present with her at the time of the purchases.

Defendant has been represented by Mr. Alex Kessel since she made her initial appearance in this case on March 10, 2014.  (Docket No. 7.)  At the conclusion of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮, the government learned that Mr. Kessel not only represents defendant, but also represents Mr. Kantrdzyan in a tax fraud case filed in the Southern Division of this Court.  In that case, United States v. Karapetian, et al., CR 13-21-JLS, the government charged Mr. Kantrdzyan with mail fraud, money laundering, unlawful use of another's means of identification, theft of government money, passing a United States Treasury check with a forged signature, and aggravated identity theft.  (Docket No. 1.) The charges in United States v. Karapetian, et al. stemmed from a tax

2

fraud scheme involving the submission of fraudulent tax returns using the personal information of identity theft victims. (Id.) On November 14, 2013, Mr. Kantrdzyan entered a guilty plea in that case. (Docket No. 280.) He was sentenced on April 25, 2014. (Docket No. 357.)

While Mr. Kantrdzyan has not yet been charged in this case, the government submits that a potential conflict may nevertheless exist, given the evidence that Mr. Kantrdzyan accompanied defendant while she made almost $200,000 in purchases as part of the alleged fraudulent scheme. Accordingly, the government is raising this potential conflict to the Court's attention so the Court may conduct any inquiry it believes is necessary to protect defendant's right to conflict-free counsel.

**III. ARGUMENT**

**A.   DEFENDANT HAS THE RIGHT TO CONFLICT-FREE COUNSEL**

Under the Sixth Amendment, criminal defendants not only have the right to the assistance of counsel, but also the assistance of counsel "free from conflicts of interest." Wood v. Georgia, 450 U.S. 261, 271 (1981); see also Mannhalt, 847 F.2d at 579 (9th Cir. 1988) (Sixth Amendment gives defendant "the right to counsel's undivided loyalty"). That right applies not only to defendants with appointed counsel, but also to those, like defendant, who retain attorneys at their own expense. See Cuyler v. Sullivan, 446 U.S. 335, 344 (1980).

A "court confronted with and alerted to possible conflicts of interest must take adequate steps to ascertain whether the conflicts warrant separate counsel." Wheat v. United States, 486 U.S. 153, 160, 108 S. Ct. 1692, 1697, 100 L. Ed. 2d 140 (1988). Federal courts "have an independent interest in ensuring that criminal trials are

3

conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160, 108 S. Ct. at 1698.  In addition, trial courts have "an institutional interest in the rendition of just verdicts in criminal cases," and in seeing that these verdicts "remain intact on appeal." Wheat, 486 U.S. at 160-61, 108 S. Ct. at 1698.  Even if a defendant provides a waiver of conflict, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."  Wheat, 486 U.S. at 160, 108 S. Ct. at 1699.

In Wheat, the Supreme Court noted that a district judge's predicament is particularly acute, given the difficulty of foreseeing whether and to what extent potential conflicts will ripen into actual conflicts in subsequent proceedings.  In view of these difficulties, the Supreme Court held that district courts have "substantial latitude" in determining whether to allow a criminal defendant to be represented by counsel burdened by a potential conflict of interest. Wheat, 486 U.S. at 163-64, 108 S. Ct. at 1699.  "The  District Court must recognize a presumption in favor of [a defendant's] counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict."  Id.; see also United States v. Kenney, 911 F.2d 315, 321 (9th Cir. 1990).

Specifically, in Wheat, the Supreme Court affirmed a district court's disqualification order despite the fact that all three co-defendants agreed to waive any claims of conflict of interest. 486 U.S. at 164, 108 S. Ct. at 1700.  Thus, while there is a presumption

4

in favor of defendant's counsel of choice, this Court retains the discretion to determine whether any waiver proffered by a defendant should be accepted in light of a serious potential for conflict that can overcome that presumption.  Wheat, 486 U.S. at 164, 108 S. Ct. at 1700.

Here, a conflict between defendant and her attorney may exist because Mr. Kessel's simultaneous and successive representation of both defendant and her husband may create a motive for Mr. Kessel to divide his loyalties and defend Ms. Gheyvandian with less than full vigor.

In Mannhalt, the Ninth Circuit suggested that when a prosecutor learns of a potential conflict of interest, the best course of action is to notify the Court.  847 F.2d at 583-84.  If the government fails to notify the Court of such potential conflicts, then convictions -- whether by plea or trial -- may be subject to future challenge.  On the other hand, if the government does notify the Court of the potential conflict, then the Court is able to ensure that the defendant is properly informed of her right to conflict-free counsel, and the Court may hear from defendant herself about whether she wishes to waive the conflict or wishes instead to proceed with new counsel.  Id.

In bringing this motion, the government reiterates that it aims neither to disqualify defendant's lawyer, nor to imply that any misconduct occurred.  Simply put, Mannhalt provides that once the government becomes "aware" of a potential conflict and has the "opportunity to bring the potential conflict to the trial judge's attention," this motion becomes necessary.  Id.  Here, the government does not necessarily believe that defense counsel's representation of

5

both defendant and her husband will affect the litigation of this case, but is nevertheless filing this motion to fulfill its duties under Mannhalt because it is "likely" that the conflict could affect the representation.  United States v. Miskinis, 966 F.2d 1263, 1268 (9th Cir. 1992).  This motion is therefore brought so the government may meet its Mannhalt obligations.

**B.    DEFENSE COUNSEL'S REPRESENTATION OF BOTH DEFENDANT AND HER HUSBAND CREATES A POTENTIAL CONFLICT OF INTEREST**

Conflicts of interest may result from either simultaneous or successive representation.  Thomas v. Municipal Ct. of the Antelope Valley Judicial District of Cal., 878 F.2d 285, 288 (9th Cir. 1989).  "With successive representation cases, 'conflicts of interest may arise if the cases are substantially related or if the attorney reveals privileged communications of the former client or otherwise divides his loyalties.'"  Id. (quoting Mannhalt, 847 F.2d at 580).

Rule 3-310(B) of the California Rules of Professional Conduct, which discusses "Avoiding the Representation of Adverse Interests," provides that:

> A member shall not accept or continue representation of a client without providing written disclosure to the client where:
>
> . . .
>
> (2) The member knows or reasonably should know that:
>
> (a) the member previously had a legal . . . relationship with a part or witness in the same matter; and
>
> (b) the previous relationship would substantially affect the member's representation; or (3) The member has or had a legal . . . relationship with another person or entity the member knows or reasonably should know would be affected substantially by resolution of the matter . . . .

Here, it is not entirely clear whether Mr. Kessel is still representing Mr. Kantrdzyan, given that Mr. Kantrdzyan was sentenced on April 25, 2014.  Even assuming he is not, however, this is a case of successive representation that raises potential conflicts.

First, while Mr. Kantrdzyan has not yet been charged in this case, he nevertheless remains a potential target and a potential witness, given the video evidence that he accompanied defendant while she purchased almost $200,000 in Cartier items as part of the charged fraudulent scheme.  As such, Mr. Kessel's continued representation of both defendant and Mr. Kantrdzyan may result in his representation of either two defendants in the same case, or a defendant and a testifying witness in the same case.

Second, defendant's and Mr. Kantrdzyan's interests became potentially adverse when ██████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████ ████████████████████████████████ Counsel's divided loyalties may, in turn, have an impact on plea negotiations.

This Court now has an obligation to inquire into the potential conflict of interest because the government has made this Court aware of the matter.  <u>United States v. Allen</u>, 831 F.2d 1487, 1494 (9th Cir. 1987) ("Trial courts presented with a possible conflict have an affirmative duty to protect a defendant's rights, which duty arises when the possibility of conflict is 'brought home to the court.'") (citations omitted); <u>see also</u> <u>Garcia v. Bunnell</u>, 33 F.3d 1193, 1199 (9th Cir. 1994) ("Trial courts have a duty of inquiry whenever they

7

know or reasonably should know that a particular conflict may exist.").

Accordingly, the government respectfully asks this Court to conduct an inquiry to ensure that defendant has been fully advised of her right to conflict-free counsel, and to determine whether defendant is validly waiving that right.

**IV.    CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court inquire into the potential conflict of interest in this case.  The government proposes a two-step process.  First, the Court should appoint separate counsel for the specific purpose of advising defendant about her right to conflict-free counsel and any "'dangers of continued representation.'"  Lockhart v. Terhune, 250 F.3d 1223, 1233 (9th Cir. 2001) (explaining Mannhalt).  Second, after that consultation has occurred, and with the specially appointed attorney in attendance, the Court should conduct a hearing on the record, personally advising defendant of her rights, inquiring whether she wishes to waive those rights, and determining whether the waiver (if any) is valid.